The case called for a plural argument, excuse me, is Burton v. Department of Illinois State Police. Counsel, you may proceed, it's your pleasure. Good afternoon, Your Honor. May I please this court? My name is Timothy Majo. I'm an assistant attorney general, and this afternoon I represent the state police. Your Honor, we respectfully ask that this court affirm the decision of the director of the Illinois State Police denying a foreign card of firearm owner's identification card to Mr. Burton who, as a convicted felon, is prohibited from possessing a firearm under federal law. Your Honor, before we get too far away, I first apologize for a little bit of delay, so I apologize for my raspy voice this afternoon. Everyone here, everyone who's argued today seems to have that, including me, unfortunately. It's going to run, Your Honor. Your Honor, the occupant facts in this case are very few and undisputed. Mr. Burton, in 2002, was convicted in California of felony possession of a controlled substance, and to be clear, that was possession for purposes of sale, and he was sentenced to 16 months in prison. Then, in April of 2012, about six and a half years after his discharge from parole, he applied for a foreign card under Section 8 of the Foreign Card Act. The Illinois State Police initially denied that, and in their denial letter, they explained that under Section 8, one of the reasons they were able to deny it is if the applicant has a felony conviction. Mr. Burton is not in this court complaining about that decision. Subsequently, he appealed to the director of the Illinois State Police under Section 10 of the Act, and the director denied that appeal. Afterward, his lawful designee, the director, explained that he had reviewed the materials that Mr. Burton had supplied, but that he saw nothing in those materials that would change his decision, or change the original decision denying the foreign card. And it's the decision of the director of the Illinois State Police that we reviewed? That's correct. And what's our standard of review? I'm sorry, Your Honor? What is our standard of review? Your Honor, it's a clearly erroneous standard in this particular case. Your Honor, the state police have advanced two independent bases in support of the director's decision. First is that under the current version of the FOIA Act, which I'll talk about a little more, which both parties accept is applicable in this particular case, Mr. Burton is forbidden, absolutely forbidden as a matter of law, from obtaining a FOIA card if he is prohibited under federal law from possessing a firearm. So can't get an Illinois FOIA card if he's prohibited under federal law from possessing a firearm. The second argument is that even if you take the federal prohibitor out of the picture, that the director did not abuse his discretion in denying Mr. Burton's application. With the court's permission, I will very, very briefly address both issues, and I'll start, if I may, with the federal prohibitor. As the court's aware, effective in January of 2013, the General Assembly adopted amendments to the FOIA Card Act. And one of those amendments provides that under no circumstances should the director or the courts grant a FOIA card, as we were discussing, to anyone who is prohibited from possessing a firearm under federal law. For example, Section 10B of the Act, and it's Section 10 that deals with appeals. Section 10B of the Act provides that even if an applicant comes into the circuit court and the circuit judge is of the view that the denial of an application is contrary to substantial justice, the Act expressly provides, let me make sure I quote this here correctly, that the circuit court shall not offer a FOIA card if, quote, the petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law. Section 10C of the Act is to the same effect, and it applies to both the director and to the courts. And it provides that neither the director nor the courts may issue a FOIA card. If doing so, then the languages would be contrary to federal law. And there are two important points about these amendments that I'd just like to touch on very briefly. The first is that in Corn v. Illinois, the Supreme Court, four members out of the court, decided that under these amendments we're talking about, the 2013 amendments, under these amendments, it is forbidden now for Illinois courts or the director, by extension, for Illinois courts to grant a FOIA card to someone who is prohibited under federal law. For possessing a firearm. And even though those four come into dissent and express concurrence, we've cited in our applied papers, the Illinois authority, that says, even in that particular circumstance, that those four, the majority of the court, that's the holding of the court. Second, as I briefly mentioned before, we really don't need to get way too deeply into that, because here, Mr. Burton has conceded, in the circuit court and in this court, that the relevant law, the applicable law, is the post-amendment law with the 2013 amendments in it. So where we stand at the end of the day is that we're sort of all in agreement that if Mr. Burton is prohibited under federal law for possessing a firearm, then he can't get a FOIA card. So, is Mr. Burton prohibited under federal law? And the answer to that, I think, is relatively straightforward. It says yes, right? He admits that he's a felon. And section 922G, if I recall correctly, of the Federal Gun Control Act, provides that a felon like Mr. Burton, somebody who's been charged and convicted of a crime where the sentence can be greater than a year, the possession of a firearm by a felon is unlawful. Full stop. What is Mr. Burton saying back? Well, he points to section 921A20 of the Gun Control Act. And that's a provision that says, under certain circumstances, convictions evaporate. They go away. We don't worry about them if all of the felon's civil rights have been fully restored. But that provision doesn't do Mr. Burton any good. And the reason for that is, again, relatively straightforward. It has three parts. One, the U.S. Supreme Court has said that for purposes of measuring the restoration of civil rights, we use the law of the convicting jurisdiction. So in this case, California. So we look to California. Right? Second, the Supreme Court and the federal courts of appeals that have talked about this have said, again, for purposes of restoring civil rights, we look to what they call the big three. Right? The right to a home elected office, the right to vote, and the right to sit on a jury. Those are the civil rights they take a look at. Are those restored? If so, then the conviction qualifies. If they're not restored, then it does not qualify. And the third is cited in our papers, the California statute and the courts unanimously constrain it that say that under California law, a convicted felon, so in Mr. Burton's position, is not entitled to sit on a jury. So at the end of the day, his civil rights have not been fully restored. He cannot exercise the big three. So when we're done, we have Mr. Burton, who has a felony conviction in California. That conviction stands because the civil rights have not been restored. That conviction means he can't possess a firearm under federal law. And that circumstance means he can't get a foreign card under Illinois law. It really is sort of that straightforward. Our second argument, Your Honors, is that even if you took the federal prohibitor out of the picture, right? So we'll see what's not in the picture. We're dealing with pre-amendment law. That the director's decision was not against, was not in the use of discretion. And let me be clear. This is an alternative argument. It's unrelated to the first. And we don't believe that the court even needs to reach this issue. I think the first one, the court decided in their favor on the first one. The court simply doesn't need to reach this issue. Okay. And that was what? Is it an abuse of discretion standard or a clearly erroneous standard? In this case, it's an abuse of discretion standard. And on your first argument, though, it's clearly erroneous? Well, probably, again, it would be clearly erroneous. I mean, it's really quite a question of law in this particular case because I don't think there's any factual issues afoot. Okay. Because Mr. Berger doesn't challenge the felony conviction. So I think it's a construction of the law. On the first issue. On the first issue, right. So I think it's a construction of the law. Okay. And the second argument, which, again, we don't believe the court needs to reach, but we'll talk about it if I may for a few seconds. The key to understanding the discretion argument is found in the language of Section 10, the appeal provision itself. And more specifically, how that provision deals with appeals from different groups of people. For example, under Section 10F of the statute, if someone has dealt with mental disabilities in the past, and now they make an application for a FOIA card and it comes up on appeal, the statute provides that the director shall grant, right, quote, shall grant relief if that applicant makes the requisite showing, whatever is required underneath the statute. Section 10C-5 is to the same effect, right. It provides that the director, again, shall grant relief if, and I think that's active law enforcement officers, if an active law enforcement officer is applying for a FOIA card and he or she makes the requisite showing. But the provision with respect to felon, Section 10C, is quite different. It provides that even if the felon makes the requisite showing under Section 10C, it says only that the director may grant, not shall grant, but may grant a FOIA card. And that distinction has quite a bit of difference. As we pointed out in our opening papers, when the legislature writes a statute, and in some portions of the statute it provides shall grant, in other portions of the statute it provides may grant, the presumption is that the legislature intended different results to happen. So the legislature comes in here and says, if somebody, again, in the classification of someone who's had maybe a mental disability in the past, if that person makes the requisite showing in the director's order, you shall grant. If an active law enforcement officer comes in and makes a requisite showing, the director shall grant. But the general assembly said that if a felon comes in and makes a requisite showing, no, no, no. In this particular case, the director may grant if he or she chooses, may grant to this FOIA statute, or the FOIA card. This court has recently, and so has the other Supreme Court, described this as a, I think it's called a permissive power, a power that a government official, he or she may use, may choose to exercise or not. And the Supreme Court has told us that when a government official has an authority that he or she may choose to exercise or not, that if the government official has a policy to use it in this particular case or that particular case and not use it here, use it there, the Supreme Court has said, has described it as, quote, a virtually unchallengeable exercise of discretion. Virtually unchallengeable exercise of discretion. So what do we have here? We have Mr. Berger, who files an appeal. He submits certain materials to the court, apparently to the director. The director, through his designee, looks at it, and the director decides there's just not enough here. Denied the FOIA card. You know, that's a virtually unchallengeable exercise of his discretion. It's an exercise of his decision, rather, well within the breadth of the authority that the General Assembly has. You're basically saying we should approach this and or adopt a rule that the director in this situation has the absolute discretion not to exercise his absolute discretion? As the discretion not to exercise, has the absolute discretion whether or not to exercise his discretion. You know, I think the answer to that is yes, you're right. The only equivalent to that is it's virtually unchallengeable. I suspect you can imagine situations where, you know, if the director decided appeals that show up on Tuesdays, you know, are not going to be able to show up. But, you know, but if the point is the director has some view about this type of application or that type of application, the General Assembly is told, well, here are the ones where if the showing is made, you must. Here are also the ones where if the showing is made, you still have a choice. And that's really our point if that's responsive to Your Honor's question. Well, wouldn't it be a somewhat safer policy stance to say the director has an awfully broad, awfully wide scope of discretion? Leave out the absolutes. We don't, we live in a world of gray. I think that would be perfectly reasonable, Your Honor. I think that's perfectly reasonable. I mean, again, even the Supreme Court, Your Honor's right to say it's absolute, virtually unchallengeable. Virtually unchallengeable. All right. So at the end of the day, you know, we have what I believe to be, you know, a relatively straightforward legal argument that under the 2013 amendments, and the only factual issue relevant is Mr. Burton, a felon. Yes, that's conceded. Right? So that argument is relatively straightforward. Everything else in there is a question of law and how you work through that. And second, in terms of the statutory construction argument, then again, there's an alternative argument to the court that under the statute, there is a difference between shall grants and may grants, and in this area where the statute affords the director may grant authority, as Your Honor says, the director has an extremely, extremely broad grant of authority to make decisions in that area. Let me, since your opponent, opposing counsel is not here, let me pose this question. An argument that was raised in their brief is that the director ignored evidence and accordingly did not exercise his discretion, and a failure to exercise discretion when an official has discretion to exercise is an abuse of discretion because of the non-exercise. And they referred evidence, which if my notes are correct, are basically the letters about this person's exemplary conduct and everything, just positive matters of record. How do you answer that challenge in their brief? Yes, Your Honor, and that argument, I believe, is based in large part on the Hyland case, if I recall correctly, in their brief. And Hyland actually says that if the director mistakenly believes that he has no discretion, that was the case where the director thought that his hands were legally tied and he didn't have a choice, that if he makes that mistake of law, then he abuses his discretion, right? That's not what happened here. There's nothing in the record here that suggests that the director understood or believed that he couldn't grant a FOIA card. And, in fact, what we have in the record is the indication in the September 20, I think it's the September 2010 letter. But it's in the record. Yes, it's the September 2012 letter, pardon me, where the director indicates that he has reviewed the materials that Mr. Burns supplied in support of his appeal. So, you know, the argument that the director thought that he couldn't do this, that he mistakenly thought that he couldn't and therefore just didn't wade into that area is incorrect, as we've described it. It's really quite different than that. It's not that the director misunderstood and didn't exercise his discretion. He exercised his discretion. He has the breadth of discretion the Honor talked about. They disagreed with the answer that he reached. But still, those are different circumstances. Sure. If the court has no questions, again, we respectfully ask that you affirm the decision of the director denying the FOIA card. Thank you. Thank you, Your Honor. I appreciate your brief and argument. We'll take the case under advisement. There are no further matters docketed for oral arguments. The court is adjourned for the day. Thank you. Thank you. All rise.